THE PEOPLE OF THE STATE OF NEW YORK on the Complaint of FRED FEIN, Complainant, *v.* JOHN J. BEATTY, Defendant.

City Magistrates' Court of New York, Municipal Term, Part 2, Borough of Brooklyn, June 30, 1939,

*John J. Bennett, Jr., Attorney-General* [*Maurice H. Matzkin, Joseph A. McLaughlin* and *Sol I. Smithline, Assistant Attorneys-General,* of counsel], for the People.

*Joseph E. Keenan* [*John M. Carmichael* of counsel], for the defendant.

PINTO, C. M.   In this case the defendant is charged with violating section 50 of the Workmen's Compensation Law in that, being a contractor or employer of labor for the alteration of certain buildings, which work constituted hazardous employment, he failed to secure to his employees the compensation provided by that section.

However, on this alteration job defendant claims and urges that he was not bound to insure these men under the Workmen's Compensation Law for the reason that they were not working for him but instead they were his partners.   (*Matter of Lyle* v. *Lyle Cider & Vinegar Co.,* 243 N. Y. 257.)

The defendant is a contractor and has been for many years.   On recent jobs he has employed some seven or eight workmen, such as carpenters and others necessary in the prosecution of such work; on all such work he paid them wages and their relationship was that of master and servant.

In February of this year the defendant procured, in his own name, a contract from the owner of the building to perform certain alteration work amounting to about $4,000.   There was no mention of any of the alleged partners in that agreement.   Defendant testified that shortly thereafter he had a talk with the men he had employed on other contracts and (and in this he was partly substantiated by two of the alleged partners) an arrangement was made whereby a partnership was created to do this particular work under which defendant was to receive fifty percentum of the profits and the other fifty percentum was to be divided equally among the laborers. There was no written evidence of the alleged partnership agreement.   No books of account or records were produced showing

that any partnership was ever formed or that the work was performed by a *bona fide* partnership. It did appear that defendant collected money from the owner of the building, deposited it in his bank account in his own name, and then paid out to these workmen, from time to time, sums which he called " advances on account of profits."

The People claim that the alleged partnership is fictitious.

I find as a fact that there was no legal binding partnership. It was plainly an illegal plan set up by defendant to circumvent the provisions of the Workmen's Compensation Law. There is no doubt in my mind about that, and in coming to this conclusion I have in mind the decision of the Court of Appeals (*Matter of Glielmi* v. *Netherland Dairy Co.*, 254 N. Y. 60) where, in a similar situation, the court cast aside a written partnership contract to ascertain the real relationship between the parties. (See, also, *Martin* v. *Peyton*, 246 N. Y. 213.)

That there was actually no meeting of the minds between defendant and his workmen on the formation of a real partnership is amply borne out by the testimony of one of them who was called by defendant. He testified that had he known he would not secure compensation if he sustained injuries on the job, he would not have given his consent to the plan, and that he did not understand that a partner could not secure any of the benefits under the Workmen's Compensation Law. All of this indicates to me only too clearly that there was no *bona fide* legal partnership. It was merely a plan worked out by the defendant to save the cost of compensation insurance and thus enable him to compete unfairly with other contractors. Such a scheme involves unfair business tactics, but that is not the real vice behind it. To employ men in a hazardous occupation and delude them into believing that they are covered by compensation insurance is an abhorrent practice that must be removed as a cancerous growth in our social and economic life.

I fully concur with the decision in *People* (*Complaint of Cohen*) v. *Levine* (160 Misc. 181). The learned magistrate in that case wrote a very painstaking opinion and I heartily subscribe to his views and conclusion. As was so aptly stated in that case: " I will not lend this court's aid to the circuitous plan conceived by the defendant to evade the requirements of the Workmen's Compensation Law."

A further question arises, as to whether the defendant has been subjected to double jeopardy. The complaint herein charges defendant with failing to keep his employees insured on the 5th of April, 1939. A similar charge for failing to have insurance on

March 20, 1939, on the same job, made on the complaint of another inspector of the Labor Department, was tried before another city magistrate and resulted in defendant's acquittal on the ground that the evidence failed to prove his guilt beyond a reasonable doubt. By reason thereof the defendant contends he has been in jeopardy twice for the same offense. Such plea or defense is without merit. Failure to keep workmen insured under the Workmen's Compensation Law is, in my opinion, a continuing misdemeanor. It is similar to a man's neglect to support his wife. It has been held that a previous conviction of a husband for failing to support his wife does not bar a further prosecution on a similar charge for a subsequent neglect. (*People ex rel. Lichtenstein* v. *Hodgson*, 126 N. Y. 647.) So, too, in a prosecution for driving while intoxicated. One may be found guilty of driving while intoxicated at one hour and prosecuted for a similar offense committed several hours later. The same is true as to a continuing nuisance or trespass.

Furthermore, it appears that under the original alleged partnership there were seven members. Two of them dropped out in March and two others were substituted. Therefore, the alleged partnership existing on March twentieth was succeeded by a new or different partnership, which it is claimed was in existence on April fifth, the date of the second offense. It is well established that there can be no double jeopardy unless the offense or crime charged is identical with, or a necessary ingredient of, the one on which the case was formerly tried, and the transaction must be the same and established by the same proof. As Professor Wharton states (1 Wharton's Criminal Law [12th ed.], 535): " The proper test is: Was the matter set out in the second indictment admissible as evidence under the first indictment, and could a conviction have been properly maintained upon such evidence? If the answer is yes, then the plea is sufficient; otherwise, it is not."

Tested by that rule, defendant's plea of double jeopardy must fail.

I find the defendant guilty. The Attorney-General has requested that the maximum fine be imposed, with the alternative of six months in jail. If the first prosecution had not resulted in an acquittal I would not hesitate to accept the recommendation, because the practice is vicious and the charge serious. As the defendant was led to believe that it was legal to go along as he did after the first complaint was dismissed, I cannot impose the maximum fine requested by the Attorney-General. Nevertheless, the court is not satisfied that this man should go free with a mere warning. He has had plenty of experience in this line of work. He is an intelligent man. He entered into this scheme fully aware of

what he was doing and mindful of the consequences of his act. The sentence should be such as to deter not only the defendant but other contractors and employers who, too frequently, engage in the obnoxious practice of luring laborers into fictitious partnerships and thus deprive them of the benefits of the Workmen's Compensation Law.

I think under all the circumstances a fine of $100 or thirty days in jail would meet the ends of justice. That is the sentence imposed.