In the Matter of the Claim of NICHOLAS GLIELMI, against NETHERLAND DAIRY CO., INC., Respondent. STATE INDUSTRIAL BOARD, Appellant.

(Argued May 12, 1930; decided June 3, 1930.)

*Hamilton Ward, Attorney-General (E. C. Aiken* of counsel), for appellant. The arrangement between the claimant and the respondent made a relationship of master and servant and not of independent contractor. (*Matter of Maher* v. *Commander Taxi Corp.*, 227 App. Div. 832; *Singer Mfg. Co.* v. *Rahn*, 132 U. S. 518; *Terry Dairy Co.* v. *Parker*, 223 S. W. Rep. 6.) Direction and control are the main elements which constitute the relation of master and servant. (*Matter of Pierce* v. *Bowen*, 247 N. Y. 305.)

*Roland Ford* and *Oscar J. Brown* for respondent. The claimant is an independent contractor. (*Engle* v. *Eureka Club*, 137 N. Y. 100; *Uppinglon* v. *City of New York*, 165 N. Y. 222; *Singer Mfg. Co.* v. *Rahn*, 132 U. S. 518; *Terry Dairy Co.* v. *Parker*, 144 Ark. 401.)

CARDOZO, Ch. J. The question to be determined is whether claimant was a servant within the meaning of the Workmen's Compensation Act and so entitled to an award.

The Netherland Company, Incorporated, was the owner of a dairy in the city of Syracuse. Its business was divided into routes, and separate routes were allotted to separate salesmen. One of these routes, described as No. 43, went to the claimant Glielmi, who was employed under a written contract. By this contract, which describes him as a salesman, he is given the privilege of making sales of milk and cream along the route allotted to him and no other; he is to make daily payments of cash for any milk disposed of, retaining for himself four cents per quart for milk and three cents per half pint for cream, the percentage to be reduced if there is a reduction of the retail price; he is to sell the company's products and not those of its competitors; he is to use the company's horses and vehicles exclusively, paying a stated price per day for its wagon and its horses; he is to have the privilege of returning any milk or cream unsold; if cash is not received, he may require the company to assume and collect for a fee the monthly accounts of responsible customers; he is to obey the orders of the company as to the care of the horses and the wagon; he is to permit the company's representative to ride with him at any time and supervise his handling of the route; he is to assume liability for loss or breakage, and is to make a deposit with the company as security for full performance; he is to be employed for a term of twelve months, but he may terminate the employment upon a notice of three weeks, and the company upon its side may put an end to it at will.

Claimant while driving a wagon in accordance with this contract was thrown out and injured. The State Industrial Board held him to be a servant, and made an award of compensation. The Appellate Division held that he was either a bailee or a joint adventurer or an independent contractor, but in no event a servant, and so dismissed the claim. An appeal by the State Industrial Board brings the case to this court.

We think there is evidence to sustain the finding of the Board that claimant was a servant, employed to sell the milk and cream of his employer in return for a commission. The contract is adroitly framed to suggest a different relation, but the difference is a semblance only, or so the triers of the facts might find. There is significance in the very description of the claimant; he is to be " a salesman," not a jobber. He is to travel a prescribed route; to use an allotted horse and wagon; to submit to supervision at the pleasure of his employer, and to hold himself subject to discharge at will. The milk and cream that he vends does not belong to him. He vends it for the company. What he does not dispose of, he returns, and if he withholds the proceeds of a sale in excess of his commission, he takes something not his own. In the event of a sale on credit, or a failure to collect the cash, he is accountable at the end of the day as if cash had been received, but the company will relieve him of the guaranty and assume the collection of the accounts, if the customers are good. We may be sure that seldom, if ever, will he choose to give a term of credit unless satisfied that the favored customer is approved by his employer. Much of his apparent freedom is in truth apparent only. He may sell for a price in excess of the schedule made known to the public; but it is plain that if he tries to do so, the customers will refuse to buy. Indeed, the witnesses for the employer very frankly concede that a sale above the schedule was a contingency too improbable for them to have to reckon with it at all. He may sell

for less than the retail price, and does so to the wholesale trade, but in that event the difference comes out of his commission, so that the profit to the company is unaffected by the change. If he does anything at variance with the will of his employer, its policy or preference, he knows that his contract of employment may be ended over night. He is bound hand and foot as long as he works the route at all, his freedom an illusion and his independence but a name.

Problems not dissimilar have arisen in connection with the use of hackney coaches and taxicabs. In this State, the same Appellate Division that ruled against this claimant held the driver of a taxicab to be a.servant though paid by the day through a percentage of receipts (*Matter of Maher* v. *Commander Taxi Corp.*, 227 App. Div. 832). In England there is a *prima facie* inference that the driver of a hackney cab, employed upon such terms, is a bailee as to the owner, though not as to the public (*Doggett* v. *Waterloo Taxi-Cab Co., Ltd.*, [1910] 2 K. B. 336), but the inference even there is generally one of fact, and slight differences will suffice to put him in the category of a servant (*Smith* v. *General Motor Cab Co., Ltd.*, [1911] A. C. 188; Labatt, Master & Servant, vol. 1, § 75). The thought back of the decisions enforcing the presumption has been summarized in a pithy line. " The cab proprietor hands over the horse and cab to the charge of the driver, to be used by him for the purpose of plying for hire at his own discretion and not subject to the proprietor's control " (COCKBURN, C. J., in *Venables* v. *Smith*, L. R. 2 Q. B. D. 279). Here the situation is different altogether. The salesman has no discretion as to the manner of performance, or none that is substantial. He travels a prescribed route from which he may not deviate. If he fails to work it diligently, he knows that there will be an end of his employment as surely as if he were working for a stated wage. On the one side there is an intimacy of control and on the other a fullness of submission that imports the

presence of a " sovereign," as the master, we are reminded, was sometimes called in the old books (*Driscoll* v. *Towle*, 181 Mass. 416, 418; *Charles* v. *Barrett*, 233 N. Y. 127, 129). The facts are near of kin to those in *Singer Mfg. Co.* v. *Rahn* (132 U. S. 518), where under mystifying words the relation of master and servant was discovered and exposed (cf. *Terry Dairy Co.* v. *Parker*, 144 Ark. 401). The existence of that relation, if it may not be adjudged as an inference of law, is, at least, upon this record, a legitimate inference of fact (*Smith* v. *General Motor Cab Co., Ltd., supra*). When conflicting inferences are possible, the finding of the Board prevails.

The order of the Appellate Division should be reversed, and the award confirmed, with costs in the Appellate Division and in this court.

POUND, CRANE, KELLOGG, O'BRIEN and HUBBS, JJ., concur; LEHMAN, J., not sitting.

Order reversed, etc.